# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

GREEN PARTY OF TENNESSEE   )
CONSTITUTION PARTY OF TENNESSEE, )
             )
             )
    Plaintiffs,     )  No. 3:11-cv-00692
             )  Chief Judge Haynes
v.            )
             )
TRE HARGETT in his official capacity as )
Tennessee Secretary of State, and  )
MARK GOINS in his official capacity  )
as Coordinator of Elections for the  )
State of Tennessee,     )
             )
    Defendants.    )

## M E M O R A N D U M

Plaintiffs, the Green Party of Tennessee and the Constitution Party of Tennessee, filed this action under 42 U.S.C. § 1983 against the Defendants: Tre Hargett, Tennessee Secretary of State, and Mark Goins, the Tennessee Coordinator of Elections (collectively, the "State"). Plaintiffs sought recognition and ballot access for their candidates in federal and state elections. In essence, Plaintiff's complaint alleged that Tennessee's ballot access statutes effectively excluded minor political parties and their candidates from ballot access and from being recognized as a political party in violation of the First Amendment. Plaintiffs also asserted a claim under the Equal Protection Clause of the Fourteenth Amendment for the State's preferential placement of candidates on the ballot.

1

Plaintiffs moved for summary judgment and the Court granted summary judgment, concluding:

> [that] Tennessee's 2.5% [signature] requirement [in Tenn. Code Ann. § 2-1-104(24),] and 119 day deadline for minor parties' ballot access [for their candidates] as a "Recognized minor party," violate Plaintiffs' First Amendment rights to associate and Tennessee voters' rights to vote for such parties' candidates;
>
> that the State's "Nominating Petition" form [and Tenn. Code Ann. § 2-5-102(a),] impermissibly compels the signatory's affirmation that he or she is a member of the party[] and violat[ed] the signatory's First Amendment right of association and privacy of the signatory's political beliefs;
>
> that the State's requirement that minor political parties select their nominees by primary elections, [Tenn. Code Ann. § 2-13-202], is an impermissible intrusion of the Plaintiffs' First Amendment right of association that includes the right to select their nominees;
>
> [that] Tenn. Code Ann. § 2-13-107(d) barring the words "Independent" and "Nonpartisan" in the name(s) of political parties violates the First Amendment rights of free speech of minor political parties and their members; and
>
> that Tenn. Code. Ann. §2-1-104(a)(24) is unconstitutional as an improper delegation of legislative authority conferred on the State by Article 1, Section 4 of the United States Constitution and, in the alternative, that the undefined discretion of the State Coordinator of Elections in § 2-1-104(a)(24) fails for vagueness.

(Docket Entry No. 45, Court's Memorandum at 88-89).

In addition, the Court enjoined the State from enforcing any deadline for a party or nominee's petition for ballot access in excess of sixty (60) days prior to the August primary. The Court concluded that Plaintiffs had the requisite number of signatures to be "recognized political parties" and directed that the parties' names be placed next to the candidates' names on the general election ballot. The Court directed the State to conduct a random public drawing for the order of placement of the candidates' names on the general election ballot. The Court also enjoined the State from requiring Plaintiffs to select their nominees by primary (Tenn. Code

2

Ann. § 2-13-20), from awarding ballot preference to the majority party (Tenn. Code Ann. § 2-5-208(d)(1)), and from prohibiting the use of "Independent or Nonpartisan" in a political party's name (Tenn. Code Ann. § 2-13-107(d)). Finally, the Court ordered Defendants to revise the "Nomination Petition" form and to delete the reference that the signatory is a member of the party.

The State then moved for a partial stay of the Court's order directing the State to place Plaintiffs' names next to the candidates' names on the November General Election ballot and directing the State to conduct a random drawing for the order of placement of political party candidates on the November General Election ballot.[1] (Docket Entry No. 57). The Court denied the State's motion for partial stay. (Docket Entry No. 60). On appeal, the Sixth Circuit Court of Appeals "den[ied] the motion for a stay with respect to the first requirement, but grant[ed] the motion with respect to the second requirement." Green Party of Tenn. v. Hargett, No. 12-5271, 2012 WL 3241679 at *1 (6th Cir. Aug. 9, 2012). The Sixth Circuit found that "[t]he record . . . contains no state-specific evidence as to whether Tennessee's party-order provision creates an impermissible 'voting cue'" so as to be "unconstitutional on its face." Id. at *4.

Before the Court is the Plaintiffs' motion for attorneys' fees and costs (Docket Entry No. 56) in the amounts of $90,096.17 and $732.04, respectively. Plaintiffs contend, in sum: (1) that Plaintiffs are the prevailing party; (2) that the requested attorneys' fees are reasonable; (3) that Plaintiffs have raised significant claims of public importance; and (4) that Plaintiffs prevailed on material claims that serve the public interest. The State opposes this motion, contending that

---

[1] The Tennessee General Assembly amended the ballot access statutes to reflect the Court's Order, except for the part of the Court's Order requiring random party placement on the ballot. Green Party of Tenn. v. Hargett, No. 12-5271, 2012 WL 3241679 at *1 (6th Cir. Aug. 9, 2012).

Plaintiffs' fee request is unreasonable in light of redundant hours and that Plaintiffs' failed to establish that the requested hourly rates reflect comparable market rates. (Docket Entry No. 61).

## A. Conclusions of Law

"Congress enacted the Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. § 1988, authorizing the district courts, in their discretion, to award reasonable attorneys' fees to the prevailing party in § 1983 federal civil rights litigation....'to ensure effective access to the judicial process for persons with civil rights grievances.'" Waldo v. Consumers Energy Co., No. 1:06-cv-768, 2012 WL 1085190, at *1 (W.D. Mich. Mar. 30, 2012) (quoting Hensley v. Eckerhart, 461 U.S. 424, 429 (1983)) (internal quotations omitted). Additionally, "[c]ourts should not place an undue emphasis on the amount of plaintiff's recovery because an award of attorney[s'] fees . . . 'encourage[s] the vindication of congressionally identified policies and rights.'" Fegley v. Higgins, 19 F.3d 1126, 1134-35 (6th Cir. 1994) (quoting United Slate, Tile & Composition Roofers, Damp & Waterproof Workers Ass'n, Local 307 v. G & M Roofing & Sheet Metal Co., 732 F.2d 495, 503 (6th Cir. 1984)). "When determining a reasonable attorneys' fee, courts consider a myriad of factors 'in light of the congressional policy underlying the substantive portions of the statute providing for the award of fees.'" Dellarussiani v. Ed Donnelly Enters., Inc., 468 Fed. Appx. 479, 485 (6th Cir. 2012) (citation omitted).

"The starting point for determining a reasonable fee is the "lodestar" calculation: the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." Waldo, 2012 WL 1085190 at *2 (citing Jordan v. City of Cleveland, 464 F.3d 584, 602 (6th Cir. 2006)). "'To arrive at a reasonable hourly rate, courts use as a guideline the prevailing market rate, defined as the rate that lawyers of comparable skill and experience can reasonably expect to

4

command within the venue of the court of record.'" <u>Waldo</u>, 2012 WL 1085190 at *2 (quoting <u>Geier v. Sundquist</u>, 372 F.3d 784, 791 (6th Cir. 2004)). The applicant must "produce satisfactory evidence - in addition to the attorney's own affidavits - that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." <u>Blum v. Stenson</u>, 465 U.S. 886, 896, n. 11 (1984); <u>accord</u> <u>Glover v. Johnson</u>, 934 F.2d 703, 716 (6th Cir. 1991). "'[A] party is free to choose whatever attorney it desires. The question is reasonableness of the rate.'" <u>Auto. Support Grp., LLC v. Hightower</u>, No. 11-11169, 2012 WL 32733, at *4 (citing <u>Hugh v. Olympia Entm't, Inc.</u>, 37 Fed.Appx. 730, 740 n. 7 (6th Cir. 2002)). In addition, "it is within a district court's discretion whether to award fees for an attorney's travel time." <u>Hightower</u>, 2012 WL 32733 at *4. "A court may consider the length and nature of counsel's professional relationship with the client in determining whether a fee is reasonable." <u>Id.</u>

"The party seeking attorney fees bears the burden of documenting the entitlement to the award with evidence supporting the hours worked and rates claimed." <u>Waldo</u>, 2012 WL 1085190, at *2 (citing <u>Gonter v. Hunt Valve Co., Inc.</u>, 510 F.3d 610, 617 (6th Cir. 2007)). The Court, however, is not always required to examine critically each individual time entry listed in the fee application. <u>See</u> <u>Iler v. Sec'y Health & Human Servs.</u>, No. 90-1028V, 1992 WL 191101, at *1 (Cl. Ct. 1992) (where Special Master declined to examine critically each time entry because the fee application reflected a "good balance between lawyer and paralegal time and the total time expended").

The reduction of attorneys' fees is appropriate where the Court finds entries that are redundant, excessive, inadequately described, clerical, or block billed in the fee invoices.

5

"Redundant hours must be excluded from the reasonable hours claimed by the fee applicant."
Hightower, 2012 WL 32733 at *6 (citations omitted).  Yet, "'there is nothing inherently unreasonable about a client having multiple attorneys.'" Id. "'For that reason[], a reduction for redundant hours 'is warranted only if the attorneys are unreasonably doing the same work. An award for time spent by two or more attorneys is proper as long as it reflects the distinct contribution of each lawyer to the case and the customary practice of multiple-lawyer litigation.'" Id.

In addition, "[f]ee-shifting statutes do not generally permit courts to award fees for clerical work." Jablonski v. Portfolio Recovery Assoc., No. 3:11CV02291, 2012 WL 1552462, at *4 (N.D. Ohio Apr. 30, 2012) (citing Missouri v. Jenkins, 491 U.S. 274, 288 n. 10 (1989)).

> [T]ime spent by a lawyer on purely clerical matters not calling for the exercise of legal expertise or judgment, and which could be equally well performed by clerical staff, should not be recoverable under § 1988.' . . . Additionally, the Sixth Circuit declined to find abuse of discretion where a district court reduced a fee award by striking clerical tasks, finding that 'while reviewing correspondence can constitute legal work, receiving and filing correspondence presumably constitutes clerical work.'

E.E.O.C. v. Whirlpool Corp., No. 3:06-cv-0593, 2011 WL 3321291 at *8 (M.D. Tenn. Aug. 2, 2011). (citations omitted). Clerical work "constitute[s] the overhead cost normally expected in legal practice." Id. at *7.

"The term 'block billing' refers to the time-keeping method by which each lawyer and legal assistant enter the total daily time spent working on [an action], rather than itemizing the time expended on specific tasks." Robinson v. Plourde, 717 F. Supp. 2d 1092, 1100 (D. Haw. 2010) (citation omitted).  "Block billing entries generally fail to specify a breakdown of the time spent on each task," id. "rendering it impossible for the Court to ascertain with a high degree of

6

certainty, the time spent on each individual task." <u>Disabled Patriots of Am. v. Genesis Dreamplex, LLC</u>, No. 3:05CV7153, 2006 WL 2404140, at *4 (N.D. Ohio Aug. 18, 2006).

### 1. Alan Woodruff

Plaintiffs seek attorneys' fees in the amount of $79,998.67 for the work of Alan Woodruff, Plaintiffs' lead counsel, at an hourly rate of $250[2] for 322.77 hours of services. Plaintiff's also seek Woodruff's expenses in the amount of $221.75, for a total award of $80,220.42. Plaintiffs contend that Woodruff is regarded as an expert in ballot access lawsuits, earned a master of law degree from the University of Washington College of Law, and a doctorate from Harvard University. (Docket Entry No. 56 at 7). Plaintiffs also assert that Woodruff devoted his full time to this action, and was unable to pursue other legal work. <u>Id.</u> Plaintiffs contend that the Tennessee ballot access statutes contain many provisions that are unique to Tennessee, thereby presenting multiple novel and difficult questions of law. <u>Id.</u> Plaintiffs' also assert that because they prevailed on all of their claims, the result obtained must be deemed exceptional. <u>Id.</u> at 8.

In response, the State contends that the lodestar amount for Plaintiffs' attorneys' fees should be adjusted to reflect an award similar to the amount in <u>Libertarian Party of Tennessee v. Goins</u>, No. 3:08-0063, a related action.[3] (Docket Entry No. 61 at 2). The State notes that <u>Goins</u>

---

[2] Plaintiffs contend that Woodruff's customary hourly rate, approved by numerous federal courts, is $350. (Docket Entry No. 56 at 7). Yet, "because of the importance of the policy issues raised in this case," Woodruff reduced his hourly rate to $250 per hour. <u>Id.</u>

[3] <u>Goins</u> is an earlier related action. <u>Goins</u> held that Tenn. Code Ann. § 2-1-104(a)(30) violated the Plaintiffs' First Amendment right to vote, Tennessee voters' First Amendment right to privacy of their political affiliation, and Plaintiffs' First Amendment right to associate as a political party. The Court concluded that Plaintiffs demonstrated that Tennessee' 2.5% requirement in § 2-1-104(a)(29), coupled with the party membership requirement in § 2-1-104(a)(30) and the State's election officials' 120 day deadline prior to the August primaries for petitions of new political parties, effectively precluded minor political party participation in state and national elections in Tennessee. The State did not appeal the decision, but the Tennessee General Assembly enacted changes to the State's ballot

7

involved discovery, including depositions, and in that action, the Court awarded $24,745 based on an hourly rate of $175 for 141.4 hours. Id. The State contends that Plaintiffs' request for attorneys' fees is unreasonable in light of the lack of discovery in this action. The State also asserts that the billed hours are redundant and that Plaintiffs have not established that the hourly rates claimed for Woodruff reflect the market rates for a "straightforward facial challenge" to election laws. Id. at 2-6. In addition, the State contends that the 322.77 hours expended by lead counsel in this matter are excessive when compared to Goins. Id. at 3.

Plaintiffs reply that a comparison of this action to Goins is irrelevant, as Plaintiffs challenged only one elections practice in Goins. (Docket Entry No. 63 at 1). In this action, Plaintiffs asserted five claims with seven constitutional defects in Tennessee law. Id. at 2. Plaintiffs also assert that counsel in this action conducted a thorough review and evaluation of the discovery in Goins for the purpose of identifying lines of arguments and defenses. Id. Plaintiffs contend that here, unlike Goins, the State submitted the opinions of two experts, which required detailed analysis.

After reviewing Woodruff's experience, expertise, and length of practice, the Court concludes that the hourly rate of $250.00 sought by Woodruff reflects the prevailing market rate for similar actions in this venue. In 2011, Judge Nixon of the Middle District of Tennessee awarded an hourly rate of $275.00 to an attorney with experience in civil rights cases. EEOC v. Whirlpool Corp., No. 3:06–cv–0593, 2011 WL 3321291, at *5 (M.D. Tenn. Aug. 2, 2011) (Nixon, J).

---

access laws that are at issue in this action.

8

After reviewing the itemized statements and the State's objections, the Court concludes that a portion of Woodruff's hours should be redacted. Here, Woodruff expended 63.2 hours before filing the complaint, citing his necessary and thorough review and evaluation of the pleadings and discovery in <u>Goins</u>. Yet, Plaintiffs also hired Darrell Castle who was local counsel in <u>Goins</u> and this action. "Counsel for the prevailing party should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice is ethically obliged to exclude such hours from his fee submission." <u>Whirlpool Corp.</u>, 2011 WL 3321291 at *5. "Where '[n]o information has been provided regarding the relevance or relationship of the other matters . . . for which professional time was expended to the present case,' fees requested for time spent on those matters will be rejected." <u>Id.</u> (citation omitted). "An attorney is not entitled to be paid in [an action] **for the work he or another attorney did in some other case.**" <u>ACLU v. Barnes</u>, 168 F.3d 423, 430 (11th Cir. 1999). Because this action involved distinct constituional claims from <u>Goins</u>, the Court concludes that half of the hours expended by Woodruff prior to the drafting of the complaint in this action are excessive. Thus, the Court excludes 31.6 per-litigation hours at Woodruff's hourly rate of $250 ($7,900.00).

The Court concludes that a portion of the litigation hours billed by Woodruff were clerical, excessive, duplicative, inadequately described and block billed. For example, a number of the telephone conferences and client "telephone calls lack[] detail from which the Court can determine if the telephone calls were actually and reasonable expended in the prosecution of this litigation." <u>Disabled Patriots of Amer.</u>, 2006 WL 2404140 at *5. In addition, a number of time entries "fail[] to state with particularity the subject of the calls. Again the calls are [block-billed]

9

with other tasks." Id. Woodruff also billed hours for tasks that were clerical or non-legal. The Court "declines to award fees to Plaintiff for hours billed by her attorneys that amount to clerical tasks and constitute the overhead cost normally expected in legal practice." Whirlpool Corp., 2011 WL 3321291 at *7. Accordingly, the Court concludes that these hours, amounting to 80.97, should be reduced by 50%. Thus, the Court excludes 40.49 hours at Woodruff's hourly rate of $250 ($10,122.50).

The State also contends that Woodruff's request of 16 hours for travel from Johnson City, Tennessee to Nashville should be billed at a reduced hourly rate, or no more than $125 per hour. (Docket Entry No. 61 at 4). The Court agrees. Plaintiffs hired Woodruff as lead counsel in this action as a sequel to the Goins action. Although Woodruff is licensed in New Mexico, he resides in Johnson City, Tennessee. (Docket Entry No. 3). Had Plaintiffs hired an out-of-state lawyer, that lawyer likely would have billed for travel time to Plaintiffs and to Nashville to prosecute this action. "The Court is unaware of any case that prevents a client from having chosen counsel, as opposed to local [Nashville] counsel, [litigate an action]." Id. Accordingly, the Court concludes that Plaintiffs' are "entitled to reimbursement for [lead counsel's] travel related expenses and the hours he billed for attending [oral argument] in this District." Id. "Expenses incurred during travel are costs that are typically passed on to a fee-paying client . . . ." Id. (citation omitted). As such, Plaintiffs should receive reimbursement for Woodruff's 16 hours of travel at a reduced hourly rate of $125. Thus, the Court excludes $2000.00 from the Plaintiffs' requested fee amount.

In addition, Plaintiffs seek 15.2 hours "for [Woodruff's] work performed on th[e] [attorney's fee] petition." Gunasekera v. Irwin, 774 F. Supp. 2d 882, 892 (S.D. Ohio 2011);

10

(Docket Entry No. 56 at 17). "Fees incurred in 'preparation of an original fee petition' are supplemental 'fees for fees.'" Id. "Such supplemental hours should not exceed three percent of the award (the 'Three Percent Rule') in the main case when the fees issue is decided without a trial or five percent of the award in the main case when there is trial." Id. (citing Coulter v. Tennessee, 805 F.2d 146, 151 (6th Cir. 1986)). Here, the requested supplemental hours constitute 5.5% of the total award. Accordingly, the Court adjusts this supplemental amount to 7.1 hours, which is 3% of the total award excluding the "fee for fees" request. Thus, the Court excludes $1,500.00 from Plaintiffs' requested fee amount.

The Court itemizing Woodruff's hours as follows:

| Date | Description | Hours | Findings |
|------|-------------|-------|----------|
| 5/5/2011 | Telephone conference with Richard Winger re: challenge to Tennessee election code. | 1.5 | Prior to litigation and hiring of counsel; 50% reduction |
| 5/9/2011 | Telephone conference with Darrell Castle re: representation of Constitution Party of Tennessee in challenge to Tennessee election code. | 1.5 | Prior to litigation and hiring of counsel; 50% reduction |
| 5/10/2011 | Telephone conference with Martin Holsinger re: representation of Green Party of Tennessee in challenge to Tennessee election code | 1.0 | Prior to litigation and hiring of counsel; 50% reduction |
| 5/11/2011 | Prepare and email engagement agreements re: representation of Green Party of Tennessee and Constitution Party of Tennessee | 1.0 | Prior to litigation; 50% reduction |
| 5/12/2011 | Receive and review order from case 3:08-00063 [Libertarian Party Et. Al. v. Goines]; Research cited authorities | 6.8 | Prior to litigation; 50% reduction |
| 5/16/2011 | Research Tennessee Code provisions relating to Ballot Access; Telephone call with office of Tennessee Coordinator of Election re: obtaining complete copy of Tennessee Code provisions relating to elections. | 4.1 | Prior to litigation; 50% reduction |

11

| | | | |
|---|---|---|---|
| 5/18/2011 | Research Tennessee Code re: issues to be addressed in new suit | 6.9 | Prior to litigation; 50% reduction |
| 5/19/2011 | Receive and Review 2011 legislative changes to Tennessee Election Code | 5.9 | Prior to litigation; 50% reduction |
| 5/20/2011 | Outline general legal arguments, counts and research requirements; Telephone conference with Richard Winger re: issues and strategy arguments. | 7.2 | Prior to litigation; 50% reduction |
| 5/23/2011 | Receive and review Complaint in case 3:08-00063 | 6.1 | Prior to litigation; 50% reduction |
| 5/24/2011 | Research and Draft General Memorandum of Law re: standards for judicial review of ballot access laws. | 6.1 | Prior to litigation; 50% reduction |
| 5/25/2011 | Research and Revise General Memorandum of Law re: standards for judicial review of ballot access laws. | 4.8 | Prior to litigation; 50% reduction |
| 5/26/2011 | Research Anderson Balancing Test and draft discussion for General Memorandum of Law re: standards for judicial review of ballot access laws | 6.1 | Prior to litigation; 50% reduction |
| | Research and draft discussion of requirements for Summary Judgment for General Memorandum of Law re: standards for judicial review of ballot access laws. | 4.2 | Prior to litigation; 50% reduction |
| **Sub-Total: Hours Expended Prior to Litigation** | | **63.2** | **Excessive considering prior related action; Reduced by 50% (31.6 Hours)** |
| 5/27/2011 | Draft Complaint | 4.5 | Approved |
| | Telephone conversation with Richard Winger re: 2011 revisions to Tennessee Code. | 1.0 | Approved |
| | Research and revise discussion of Anderson Balancing test for General Memorandum of Law re: standards of judicial review of ballot access laws | 1.6 | Approved |
| 5/28/2011 | Research and draft discussion of requirements for Preliminary Injunction for General Memorandum of Law re: standards for judicial review of ballot access laws. | 2.1 | Approved |
| 5/30/2011 | Research and draft arguments regarding | 5.2 | Approved |

12

| | | | |
|---|---|---|---|
| | Count I-A. | | |
| | Research and revise discussion of requirements for Summary Judgment for General Memorandum of Law re: standards for judicial review of ballot access laws. | 3.1 | Approved |
| 5/31/2011 | Research and draft arguments regarding Count I-B. | 4.1 | Approved |
| | Revise arguments regarding Count I-A | 3.8 | Approved |
| 6/1/2011 | Research and revise arguments regarding Count I-B. | 6.2 | Duplicative, excessive |
| 6/2/2011 | Research and draft arguments regarding Count III. | 7.8 | Duplicative, excessive |
| 6/3/2011 | Research and draft arguments regarding Count IV. | 6.7 | Approved |
| 6/6/2011 | Research and draft arguments regarding Count II. | 5.7 | Approved |
| 6/9/2011 | Research and revise arguments regarding Count II. | 5.8 | Approved |
| 6/10/2011 | Research and revise discussion of Anderson Balancing Test for General Memorandum of law re: standards for judicial review of ballot access laws. | 4.7 | Approved |
| 6/17/2011 | Research and revise Complaint to track language and substance of case authorities in motions for summary judgment | 7.1 | Approved |
| 6/20/2011 | Research and revise arguments regarding Count III. | 7.1 | Approved |
| 6/21/2011 | Research and revise arguments regarding Count IV. | 6.3 | Approved |
| 6/22/2011 | Telephone conversation with Darrell Castle, Esq. re: Complaint; Research, Review and Revise Complaint | 6.5 | Approved |
| 6/24/2011 | Final Revisions to Complaint | 3.8 | Clerical |
| 6/30/2011 | Edit all motions for summary judgment; e-mail drafts to Darrell Castle and Richard Winger | 7.1 | Approved |
| 7/5/2011 | Revise/edit General Memorandum of Law in support of Motions for Summary Judgment. | 7.1 | Approved |
| 7/12/2011 | Telephone conversation with Darrell Castle typo and grammar corrections to Complaint and schedule for filing and | 0.8 | Clerical |

13

| | | | |
|---|---|---|---|
| | service of process | | |
| 7/20/2011 | Receive and review legal and editorial comments from Arthur Lester, Esq; Research legal issues and revise GENERAL motion in support of motions for summary judgment. | 1.8 | Block billing |
| 7/21/2011 | Receive and review legal and editorial comments from Arthur Lester, Esq; Research legal issues and revise motion for summary judgment on counts I-A and B. | 1.0 | Block billing |
| 7/25/2011 | Supplemental Research and editing- Count I-A. | 3.2 | Approved |
| 7/26/2011 | Supplemental Research and editing- Count I-B. | 4.3 | Approved |
| | Supplemental Research and editing- Count II. | 2.6 | Approved |
| 7/27/2011 | Supplemental Research and editing- Count IV. | 1.1 | Approved |
| 8/4/2011 | Research and Draft Motion for Expedited Ruling. | 3.7 | Approved |
| 8/5/2011 | Draft preliminary Rule 26 statement for Case Management Conference | 1.7 | Approved |
| 8/12/2011 | Telephone conversation with Richard Winger re: requirements for expert affidavit in support of motion for summary judgment. | 3.6 | Approved |
| 8/16/2011 | Draft and file motion to appear at status conference be telephone and motion to transfer case. | 2.5 | Block Billing and clerical |
| 8/17/2011 | Telephone conversation with Richard Winger; Receive and review e-mail attachments re: party ballot access signature requirements, Edit Motion for summary judgment re: Count I-A adding argument re: constitutionality of 40,000+ party petition signature requirement. | 7.6 | Clerical, block billing, and inadequate documentation |
| 8/20/2011 | Draft and file motion for admission pro hac vice. | 0.3 | Approved |
| | Receive and review editor's comments on General Motion for Summary Judgment and motion for summary judgment on Counts II, III, and IV. | 3.6 | Clerical |
| 8/21/2011 | Edit GENERAL memorandum of Law in | 3.7 | Approved |

14

| | | | |
|---|---|---|---|
| | Support of Motions for Summary Judgment. | | |
| 8/26/2011 | Draft Joint Status Report and proposed order of case management | 2.8 | Approved |
| 8/30/2011 | Research "associational standing;" Telephone conversation with Mark Brown, Esq, counsel in pending Ohio ballot access case Receive and review Briefs in Ohio case; Telephone Conversation with Richard Winger re: content/issues requirements for expert affidavit, | 7.3 | Clerical, block billing, and excessive |
| 8/31/2011 | Review all briefs in Libertarian Party v. Goins (2008) to identify arguments in opposition and address in Motions for Summary Judgment; Revise Motions; Telephone conference with Arthur Lester, Esq. | 4.7 | Clerical, excessive, and inadequate description |
| 9/1/2011 | Review all, motions for summary judgment for requirements for expert opinion; telephone conversation with Richard Winger; Draft affidavit and outline expert opinion; review order by Judge Hares re: case management conference; draft and file motions to continue and to appear telephonically. | 6.0 | Clerical, excessive, inadequate description, and block billing |
| 9/12/2011 | Telephone conference with Janet Kleinfelter, Esq.; Research objection to Plaintiffs' service of process; Telephone conference with Richard Winger; Draft proposed Case Management Order; e-mail (X2) Janet Kleinfelter. | 1.6 | Clerical, inadequate description, and block billing |
| 9/13/2011 | Finalize and file motions for summary judgment , general memorandum supporting motions, and motion for expedited proceedings; E-mail Darrell Castle re: Janet Kleinfelter's position regarding service of process; E-mail Janet Kleinfelter providing notice of filings. | 1.1 | Clerical and block billing |
| 9/22/2011 | Receive and review J. Kleinfelter's comments on proposed Case Management Order; Research arguments made in "Defendant" Theory of the case; | 3.2 | Clerical and block billing |

15

| | | | |
|---|---|---|---|
| | "e-mail Janet Kleinfelter re: proposed changes. | | |
| 9/23/2011 | Research defenses asserted by Defendants in Proposed Case Management Order; Daft arguments for responsive pleadings. | 4.1 | Block billing |
| 9/26/2011 | Receive and Review e-mail from Janet Kleinfelter; Revise and file Proposed Case Management Order. [G] | 0.3 | Approved |
| 9/30/2011 | Telephone call to Judge's Chambers re: telephonic appearance at Case Management Conference; Appear at Case Management Conference; Telephone conference with Richard Winger re: Conference and potential defendant expert witnesses. | 1.1 | Clerical and block billing |
| 11/21/2011 | Draft and file Amended Motion to Amend Case Management Order; telephone conference with Janet Kleinfelter (x2); Receive and review expert report of Bruce Oppenheimer. | 2.1 | Clerical, inadequate description and block billing |
| 11/22/2011 | Read and evaluate Expert Report of Bruce Oppenheimer; Research and Draft analysis for REPLY Brief. | 4.3 | Approved |
| 11/24/2011 | Receive and review Richard Winger's comments of Defendants' expert's Reports; Expand draft analysis of reports and expand REPLY Brief. | 3.8 | Approved |
| 12/13/2011 | Receive, review RESPONSE and attachments; Research and draft REPLY | 7.3 | Clerical, block billing |
| 12/14/2011 | Research and revise REPLY; Telephone conference with Richard Winger | 6.8 | Approved |
| 12/24/2011 | Review pleadings and arguments; begin drafting outline for Oral Arguments. | 2.7 | Approved |
| 1/5/2012 | Review pleadings, Draft Outline for Oral Argument. | 4.6 | Approved |
| 1/6/2012 | Review pleadings, Draft Outline for Oral Argument | 5.10 | Approved |
| 1/9/2012 | Travel to Nashville, Appear at Oral Argument | 10.0 | Travel Hours: Approved |
| | Travel from Nashville to Home | 6.0 | Travel Hours: Approved |
| 2/3/2012 | Receive, review and analyze court ruling; Telephone conversation with Richard | 3.3 | Approved |

16

| | | | |
|---|---|---|---|
| | Winger and Martin Holsinger (Chair, Green Party) | | |
| 2/6/2012 | Telephone conversation with co-counsel Darrell Castle and consulting counsel Arthur Lester, Telephone call to Janet Kleinfelter – Left CB message; Draft motion for clarification. | 1.7 | Clerical, block billing, and inadequate description |
| 2/28/2012 | Telephone conference with Court and Judge's Clerk, Draft and file Motion to Ascertain Status | 0.5 | Clerical and block billing |
| 2/29/2012 | Receive and review Orders; Telephone conference with Richard Winger and Darrell Castle re: ruling and compilation of time and expense records. | 0.67 | Clerical, block billing |
| 3/1/2012 | Research and Draft Motion for Attorney's fees and Costs. | 6.0 | Fee Motion Hours |
| 3/2/2012 | Receive and Review Notice of Appeal; Research and Draft Motion to Ascertain Status with respect to entry of appealable final order. | 3.7 | Block billing |
| 3/5/2012 | Research and revise motion for attorney's fees and costs | 7.1 | Fee Motion Hours |
| 3/6/2012 | Research and review Order on Motion to Ascertain Status; Telephone Conferences with Clients and Richard Winger | 0.8 | Clerical, excessive, inadequate description and block billing |
| 3/9/2012 | Receive, review and compile Fee Affidavits and supporting documentation; Revise and finalize motion for fees and costs. | 2.1 | Fee Motion Hours |
| **Sub-Total:** Litigation Hours | | 228.37 | Reduced by 50% because excessive, clerical, block billed, etc. |
| **Sub-Total:** Travel Hours | | 16.0 | Approved at $125 hourly rate |
| **Sub-Total:** Fee Motion | | 13.1 | Reduced to 3% |
| **TOTAL** | | 322.77 | |

(Docket Entry No. 56 at 12-17).

17

The Court concludes that Woodruff also charged a reasonable total of $221.75 for lodging, meal, and transportation costs from Johnson City to Nashville to attend oral argument. (Docket Entry No. 56 at 17).

Thus, the Court concludes that the total award for Woodruff, including adjusted attorneys' fees and expenses, is $58,697.92.

### 2. Darrell Castle

Plaintiffs seek an award of attorneys' fees and expenses for the work of Darrell Castle, Plaintiff's local counsel, in the amount of $2,645.49. Plaintiffs incurred attorneys' fees in the amount of $2,135.00 at an hourly rate of $175 for 12.2 hours of Castle's services. Castle also charged Plaintiffs his expenses in the amount of $510.49. The State objects to the award of Castle's attorneys' fees for his February 3, 2012 "review memorandum of the Court" billing entry. (Docket Entry No. 61 at 6). The State contends that Plaintiffs fail to show that Castle's review of the Court's memorandum opinion on February 3, 2012 was necessary, or that he consulted with anyone or "performed any legal services related to that review." Id. at 4-5. The State contends that this amount should be eliminated. Id. at 5.

Here, Castle expended 3.0 hours on a review of the Court's memorandum opinion. The Court finds that Plaintiffs have met their burden as the 3.0 hours billed by Castle to review the memorandum opinion would be a necessary service as local counsel. Castle's review "reflected a distinct contribution on the part of [Castle]" in his review. Barnes, 168 F.3d at 433. Therefore, the Court awards Castle's total requested attorneys' fees at an hourly rate of $175.

As to Plaintiffs' award for Castle's expenses in the amount of $510.49 for certified mailing, federal express, complaint processing, and filing cost of the complaint, the Defendants

18

do not dispute these costs as unreasonable. (Docket Entry No. 61). Thus, the Court should award these costs to Plaintiffs.

### 3. Arthur Lester

Plaintiffs seek attorneys' fees for the work of Arthur Lester, Plaintiffs' additional counsel, in the amount of $4,125.00 for 16.5 hours of services. (Docket Entry No. 56 at 28). Lester's established hourly rate is $250. Id. at 8. Lester was graduated from Florida State University College of Law in 1988 after practicing as a physician for twenty years. Id. Lester has previously participated as counsel in constitutional challenges to ballot access laws and has extensive experience in matters of constitutional law. Id. In response, the State contends the Court should not award Lester's attorneys' fees to Plaintiffs because Lester's expended hours are redundant, duplicative of Woodruff's work, and should not have been billed. (Docket Entry No. 61 at 4). The State also contends that Lester's $250 hourly rate is unreasonable and a $175 hourly rate is instead reasonable. Id. at 5-6.

Here, Lester's time entries are block-billed, with two of the entries billed over a number of days. (Docket Entry No. 56 at 28). Further, Lester "does not [adequately] describe the work performed" in his time entries. Hisel, 2007 WL 2822031 at *6. For example, from July 21 to July 25, 2011 the description is simply "[c]ontinued editing and teleconferences." (Docket Entry No. 56 at 28). The documentation lacks reasonable detail of the nature of the work from which the Court can determine if the hours expended were actually and reasonably expended in the prosecution of this action. Further, Plaintiffs do not cite Lester's role or distinct contribution to the prosecution of this action.

19

| Date | Description | Hours | Findings |
|------|-------------|-------|----------|
| 7-11 to 7-12-2011 | Brief analysis and editing | 3.0 | Block billing |
| 7-13-2011 | Continued analysis and editing | 1.5 | Block billing |
| 7-15-2011 | Editing of brief | 1.25 | Redundant |
| 7-20-2011 | Teleconference re: initial draft of edited brief. | 0.75 | Duplicative |
| 7-21 to 7-25-2011 | Continued editing and teleconferences | 7.0 | Inadequate Description |
| 9-5-2011 | Final edit and Motion | 3.0 | Inadequate Description |
| **TOTAL** | | **16.5** | **Excluded** |

(Docket Entry No. 56 at 28). The Court concludes that Plaintiffs have not met their burden of showing that the hours expended by Lester are not redundant of the hours already expended by Woodruff and Castle. Barnes, 168 F.3d at 433. Thus, Lester's attorneys' fees are unreasonable as redundant and should not be awarded, reducing Plaintiffs' requested fee amount by $4,125.00.

### 4. Richard Winger

Plaintiffs also seek an award for Richard Winger's expert fees in the amount of $3,837.50 for 30.7 hours of service. (Docket Entry No. 56 at 32). Richard Winger charged an hourly rate of $125. Id. Reasonable expert fees may be awarded as costs to prevailing parties under § 1983. Jones v. Smith-McKenney Co., Inc., No. 3:05-CV-62-JMH, 2006 WL 1206368, at *2 n. 3 (E.D. Ky. Apr. 28, 2006). The Court concludes that Plaintiffs' costs for expert fees in the amount of $3,837.50 are reasonable and should be awarded in this action.

20

## B. Conclusion

For these reasons, the Court grants an award of reasonable attorneys' fees and costs to Plaintiffs, the Green Party of Tennessee and the Constitution Party of Tennessee, in the amount of $65,180.91.

An appropriate Order is entered herewith.

ENTERED this the _14th_ day of November, 2012.

WILLIAM J. HAYNES, JR.
Chief Judge
United States District Court