IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

GREEN PARTY OF TENNESSEE, )
CONSTITUTION PARTY OF )
TENNESSEE, )
)
)
Plaintiffs, ) No. 3:11-cv-00692
) Chief Judge Haynes
v. )
)
TRE HARGETT, in his official capacity as )
Tennessee Secretary of State, and MARK )
GOINS, in his official capacity as )
Coordinator of Elections for the State of )
Tennessee, )
)
Defendants. )
)

## MEMORANDUM

Plaintiffs, the Green Party of Tennessee and the Constitution Party of Tennessee, filed this action under 42 U.S.C. § 1983 against the Defendants: Tre Hargett, Tennessee Secretary of State, and Mark Goins, the Tennessee Coordinator of Elections (collectively, the "State"). Plaintiffs sought recognition and ballot access for their candidates in federal and state elections. In essence, Plaintiff's complaint alleged that Tennessee's ballot access statutes effectively excluded minor political parties and their candidates from ballot access and from being recognized as a political party in violation of the First Amendment. Plaintiffs also asserted a claim under the Equal Protection Clause of the Fourteenth Amendment for the State's preferential placement of candidates on the ballot.

Plaintiffs moved for summary judgment and the Court granted summary judgment, concluding:

> [that] Tennessee's 2.5% [signature] requirement [in Tenn. Code Ann. § 2-1-104(24),]
> and 119 day deadline for minor parties' ballot access [for their candidates] as a

"Recognized minor party," violate Plaintiffs' First Amendment rights to associate and Tennessee voters' rights to vote for such parties' candidates;

that the State's "Nominating Petition" form [and Tenn. Code Ann. § 2-5-102(a),] impermissibly compels the signatory's affirmation that he or she is a member of the party[] and violat[ed] the signatory's First Amendment right of association and privacy of the signatory's political beliefs;

that the State's requirement that minor political parties select their nominees by primary elections, [Tenn. Code Ann. § 2-13-202], is an impermissible intrusion of the Plaintiffs' First Amendment right of association that includes the right to select their nominees;

[that] Tenn. Code Ann. § 2-13-107(d) barring the words "Independent" and "Nonpartisan" in the name(s) of political parties violates the First Amendment rights of free speech of minor political parties and their members; and

that Tenn. Code. Ann. § 2-1-104(a)(24) is unconstitutional as an improper delegation of legislative authority conferred on the State by Article 1, Section 4 of the United States Constitution and, in the alternative, that the undefined discretion of the State Coordinator of Elections in § 2-1-104(a)(24) fails for vagueness.

(Docket Entry No. 45, Court's Memorandum at 88-89).

In addition, the Court enjoined the State from enforcing any deadline for a party or nominee's petition for ballot access in excess of sixty (60) days prior to the August primary. The Court concluded that Plaintiffs had the requisite number of signatures to be "recognized political parties" and directed that the parties' names be placed next to the candidates' names on the general election ballot. The Court directed the State to conduct a random public drawing for the order of placement of the candidates' names on the general election ballot. The Court also enjoined the State from requiring Plaintiffs to select their nominees by primary (Tenn. Code Ann. § 2-13-20), from awarding ballot preference to the majority party (Tenn. Code Ann. § 2-5-208(d)(1)), and from prohibiting the use of Independent or Nonpartisan" in a political party's name (Tenn. Code Ann. § 2-13-107(d)). Finally, the Court ordered Defendants to revise the "Nomination Petition" form and to delete the

reference that the signatory is a member of the party.

The State then moved for a partial stay of the Court's order directing the State to place Plaintiffs' names next to the candidates' names on the November General Election ballot and directing the State to conduct a random drawing for the order of placement of political party candidates on the November General Election ballot. (Docket Entry No. 57). The Court denied the State's motion for partial stay. (Docket Entry No. 60). On appeal, the Sixth Circuit Court of Appeals "den[ied] the motion for a stay with respect to the first requirement, but grant[ed] the motion with respect to the second requirement." Green Party of Tenn. v. Hargett, No. 12-5271, 2012 WL 3241679 at *1 (6th Cir. Aug. 9, 2012). The Sixth Circuit found that "[t]he record . . . contains no state-specific evidence as to whether Tennessee's party-order provision creates an impermissible 'voting cue'" so as to be "unconstitutional on its face." Id. at *4.

The Court also concluded that the ballot preference statute, Tenn. Code Ann. § 2-5-208(d)(1), created "an impermissible 'voting cue'" and violated the Equal Protection Clause. Id. at 82-83. The Court directed the Defendants to conduct a random public drawing to determine the order of the parties' candidates on the November 2012 general election ballot. Id.

On March 13, 2012, Defendants moved for a partial stay of the Order for the random drawing given the Defendants' appeal. On March 16, 2012, the Court denied that motion. (Docket Entry Nos. 59 and 60). The Defendants then moved for the Sixth Circuit to stay the Order for the random public drawing, and the Sixth Circuit granted that motion. Green Party of Tennessee v. Hargett, 493 Fed. Appx. 686, 690 (2012). During the appeal, the Tennessee General Assembly amended the Tennessee ballot access statutes, effective May 2012, and Plaintiffs submitted new evidence on appeal. The Sixth Circuit reversed in part and remanded two of Plaintiffs' ballot-access claims for

reconsideration. The Sixth Circuit's remand requires reconsideration of two claims: (1) Plaintiffs' challenge to Tennessee's amended statutory requirements for party recognition and ballot access for minor political parties' candidates, and (2) Plaintiffs' challenge to Tennessee's ballot preference statute mandating the listing of the political parties' candidates on the general election ballot, namely, majority party, minority party, and recognized minor party. Green Party of Tennessee v. Hargett, 700 F.3d 816, 824, 827 (6th Cir. 2012). As the Sixth Circuit explained:

> The plaintiffs' ballot-access challenge boils down to two separate claims: (1) that the party-primary requirement impermissibly burdened their right to select their own nominees; and (2) that the party-primary requirement, the 119-day filing deadline, and the 2.5% signature provision combined to deny them access to the ballot. Because Tennessee now gives minor political parties the option to select their nominees for office under their own internal rules, the first of these claims is moot.
>
> Whether the second claim is also moot is a different question. The district court held that the 2.5% signature provision was unconstitutional both in combination with the 119-day filing deadline and standing alone. That provision—which is still in effect today—was therefore a core component of the "controversy" below. Because at least this component of Tennessee's ballot-access laws remains unconstitutional under the district court's analysis, the plaintiffs' second claim is not moot.
>
> * * *
>
> In our view, the district court should be given this opportunity here. The court should be able to evaluate the various components of Tennessee's election laws as part of the larger framework for providing ballot access to minor political parties ...That framework has fundamentally changed since the district court decided the case because the party-primary requirement is no longer mandatory, the petition-filing deadline has moved from seven months before the general election to only three months before, and minor-party candidates are no longer required to submit nominating petitions meeting the 2.5% signature provision and 119-day filing deadline unless their party chooses to hold a primary election.
>
> These changes are significant enough to warrant remanding the ballot-access claim to the district court for reconsideration. As part of its reconsideration, however, the district court must take into account that the 2.5% signature requirement, standing alone, is not unconstitutional on its face. See, e.g., Am. Party of Texas v. White, 415

4

U.S. 767, 789 (1974) ("Demanding signatures equal in number to 3% or 5% of the vote in the last election is not invalid on its face."); Jenness v. Fortson, 403 U.S. 431 (1971) (upholding a Georgia law requiring independent and minor-party candidates to secure supporting signatures amounting to at least 5% of the total voters from the last election).

* * *

The plaintiffs also challenged as facially unconstitutional Tennessee's provision that "on general election ballots, the name of each political party having nominees on the ballot shall be listed in the following order: majority party, minority party, and recognized minor party, if any." Id. § 2–5–208(d)(1). In striking down this provision, the district court concluded that the State's "preferential placement of the majority party candidates on election ballots provides an impermissible 'voting cue' that violates Plaintiffs' First Amendment rights as well as the First Amendment rights of Tennessee voters." Green Party, 882 F.Supp.2d at 1016, 2012 WL 379774, at *52. The court based its conclusion largely on two empirical studies, one of which found "'that ballot order effects, particularly in relatively low salience elections, are both statistically significant and large enough in magnitude to alter the outcomes of elections.'" Id. (quoting Laura Miller, Election by Lottery: Ballot Order, Equal Protection, and the Irrational Voter, 13 N.Y.U. J. Legis. & Pub. Pol'y 373, 405 (2010)).

On appeal, the State stresses the facial nature of this challenge. "A facial challenge to a legislative Act is, of course, the most difficult challenge to mount successfully, since the challenger must establish that no set of circumstances exists under which the Act would be valid." United States v. Salerno, 481 U.S. 739, 745, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987). Courts do not usually grant this "strong medicine ... because such efforts do not seek to invalidate laws in concrete, factual settings"

. . . . The State presumptively uses what is known as a "party block" ballot form for general elections, meaning that "all of the candidates for a party are listed in a single column." Miller, 13 N.Y.U. J. Legis. & Pub. Pol'y at 388 & n.77; see Tenn.Code Ann. § 2–5–206(b)(2) (mandating the "party block" ballot form for general elections, subject to certain exceptions). This form is distinct from an "office block" ballot form, "in which candidates are listed vertically under the heading of the office they seek." Miller, 13 N.Y.U. J. Legis. & Pub. Pol'y at 388. The study cited by the district court analyzed elections "in states that use the 'office block' ballot form in general elections," but not elections in states that use the "party block" form. Id. As for the "party block" states, the study's author hypothesized that, "[g]iven the salience of the party label with this type of ballot, one should expect that positional effects would be minimal." Id. Consequently, the evidence on which the district court relied

5

provided no basis to hold that Tenn. Code Ann. § 2–5–208(d)(1) is unconstitutional on its face.

While the State's appeal was pending, however, the plaintiffs received our permission to file an exhibit of a sample general-election ballot from Washington County that uses the office-block format. But this exhibit is not sufficient to alter our conclusion that the district court wrongly held that the party-order provision is facially unconstitutional. The significance, if any, of Washington County's general-election ballot format or any other Tennessee ballots that might use the office-block format is not for us to decide in the first instance, especially because such a format appears to conflict with the presumptive "party block" ballot specified in Tenn.Code Ann. § 2–5–206(b)(2). See Taft Broad. Co. v. United States, 929 F.2d 240, 243–44 (6th Cir.1991) (listing cases stating the general rule that issues not litigated in the trial court are not appropriate for appellate consideration). Rather, the district court is the best forum in which to further develop the factual record as necessary.

Id. at 823-24, 826-27.

On remand, the Court granted Plaintiffs' renewed motion for summary judgment and denied Defendants' motion for summary judgment. (Docket Entry No. 98). The Court concluded, that: (1) the provisions of Tenn. Code Ann. §§ 2-1-104(a)(24) and 2-13-107(a)(2) requiring a minor political party to submit signatures of eligible voters equal to 2.5% of the total voters in the last Gubernatorial election violates Plaintiffs' and their members First Amendment right to associate as a political party and the rights of Tennessee voters to competition in general elections; and (2) Tenn. Code Ann.§ 2-5-208(d)(1) awarding a preferential ballot placement to the candidate of the majority political party violates the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

Before the Court is the Plaintiffs' supplemental motion for attorneys' fees and costs (Docket Entry No. 100) in the amounts of $30,812.50 and $525.56, respectively, in addition to the fees and costs previously awarded of $65,180.91 (Docket Entry No. 66). Following Plaintiffs filing their initial motion for attorneys' fees and costs, Plaintiffs have incurred additional fees and costs

6

associated with the appeal of action to the Sixth Circuit and the Sixth Circuit's subsequent remand this action to this Court. Plaintiffs contend, in sum: (1) that Plaintiffs are the prevailing party; (2) that the requested attorneys' fees are reasonable; (3) that Plaintiffs have raised significant claims of public importance; and (4) that Plaintiffs prevailed on material claims that serve the public interest. The State opposes this motion, contending that Plaintiffs' fee request is unreasonable in light of redundant hours, non-recoverable clerical work, and block billing. (Docket Entry No. 101).

### A. Conclusions of Law

The purpose of the Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. § 1988, is "to ensure effective access to the judicial process for persons with civil rights grievances." Hensley v. Eckerhart, 461 U.S. 424, 429 (1983). Additionally, "[c]ourts should not place an undue emphasis on the amount of plaintiff's recovery because an award of attorney[s'] fees . . . 'encourage[s] the vindication of congressionally identified policies and rights.'" Fegley v. Higgins, 19 F.3d 1126, 1134-35 (6th Cir. 1994) (quoting United Slate, Tile & Composition Roofers, Damp & Waterproof Workers Ass'n, Local 307 v. G & M Roofing & Sheet Metal Co., 732 F.2d 495, 503 (6th Cir. 1984)). "When determining a reasonable attorneys' fee, courts consider a myriad of factors 'in light of the congressional policy underlying the substantive portions of the statute providing for the award of fees.'" Dellarussiani v. Ed Donnelly Enters., Inc., 468 Fed. Appx. 479, 485 (6th Cir. 2012) (citation omitted).

"The starting point for determining a reasonable fee is the "lodestar" calculation: the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." Waldo, 2012 WL 1085190 at *2 (citing Jordan v. City of Cleveland, 464 F.3d 584, 602 (6th Cir. 2006)). "'To arrive at a reasonable hourly rate, courts use as a guideline the prevailing market rate, defined as the

7

rate that lawyers of comparable skill and experience can reasonably expect to command within the venue of the court of record.'" Waldo, 2012 WL 1085190 at *2 (quoting Geier v. Sundquist, 372 F.3d 784, 791 (6th Cir. 2004)). The applicant must "produce satisfactory evidence – in addition to the attorney's own affidavits – that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." Blum v. Stenson, 465 U.S. 886, 896, n.11 (1984); accord Glover v. Johnson, 934 F.2d 703, 716 (6th Cir. 1991). "'[A] party is free to choose whatever attorney it desires. The question is reasonableness of the rate.'" Auto. Support Grp., LLC v. Hightower, No. 11-11169, 2012 WL 32733, at *4 (citing Hugh v. Olympia Entm't, Inc., 37 Fed. Appx. 730, 740 n.7 (6th Cir. 2002)). In addition, "it is within a district court's discretion whether to award fees for an attorney's travel time." Hightower, 2012 WL 32733 at *4. "A court may consider the length and nature of counsel's professional relationship with the client in determining whether a fee is reasonable." Id.

"The party seeking attorney fees bears the burden of documenting the entitlement to the award with evidence supporting the hours worked and rates claimed." Waldo, 2012 WL 1085190, at *2 (citing Gonter v. Hunt Valve Co., Inc., 510 F.3d 610, 617 (6th Cir. 2007)). The Court, however, is not always required to examine critically each individual time entry listed in the fee application. See Iler v. Sec'y Health & Human Servs., No. 90-1028V, 1992 WL 191101, at *1 (Cl. Ct. 1992) (where Special Master declined to examine critically each time entry because the fee application reflected a "good balance between lawyer and paralegal time and the total time expended").

The reduction of attorneys' fees is appropriate where the Court finds entries that are redundant, excessive, inadequately described, clerical, or block billed in the fee invoices.

8

"Redundant hours must be excluded from the reasonable hours claimed by the fee applicant." Hightower, 2012 WL 32733 at *6 (citations omitted). Yet, "'there is nothing inherently unreasonable about a client having multiple attorneys.'" Id. "For that reason[], a reduction for redundant hours 'is warranted only if the attorneys are unreasonably doing the same work. An award for time spent by two or more attorneys is proper as long as it reflects the distinct contribution of each lawyer to the case and the customary practice of multiple-lawyer litigation.'" Id.

In addition, "[f]ee-shifting statutes do not generally permit courts to award fees for clerical work." Jablonski v. Portfolio Recovery Assoc., No. 3:11CV02291, 2012 WL 1552462, at *4 (N.D. Ohio Apr. 30, 2012) (citing Missouri v. Jenkins, 491 U.S. 274, 288 n. 10 (1989)).

> [T]ime spent by a lawyer on purely clerical matters not calling for the exercise of legal expertise or judgment, and which could be equally well performed by clerical staff, should not be recoverable under ' 1988.' . . . Additionally, the Sixth Circuit declined to find abuse of discretion where a district court reduced a fee award by striking clerical tasks, finding that 'while reviewing correspondence can constitute legal work, receiving and filing correspondence presumably constitutes clerical work.'

E.E.O.C. v. Whirlpool Corp., No. 3:06-cv-0593, 2011 WL 3321291 at *8 (M.D. Tenn. Aug. 2, 2011). (citations omitted). Clerical work "constitute[s] the overhead cost normally expected in legal practice." Id. at *7.

"The term 'block billing' refers to the time-keeping method by which each lawyer and legal assistant enter the total daily time spent working on [an action], rather than itemizing the time expended on specific tasks." Robinson v. Plourde, 717 F. Supp. 2d 1092, 1100 (D. Haw. 2010) (citation omitted). "Block billing entries generally fail to specify a breakdown of the time spent on each task," id. "rendering it impossible for the Court to ascertain with a high degree of certainty, the time spent on each individual task." Disabled Patriots of Am. v. Genesis Dreamplex, LLC, No.

3:05CV7153, 2006 WL 2404140, at *4 (N.D. Ohio Aug. 18, 2006).

### 1. Richard Winger

Plaintiffs seek attorneys' fees in the amount of $30,812.50 for the work of Alan Woodruff, Plaintiffs' lead counsel, at an hourly rate of $250 for hours of services. Plaintiff's also seek Woodruff's expenses in the amount of $525.56, for a total award of $31,338.06, in addition to the $65,180.91 in fees and costs previously awarded. Plaintiffs contend that Woodruff is regarded as an expert in ballot access lawsuits, earned a master of law degree from the University of Washington College of Law, and a doctorate from Harvard University. (Docket Entry No. 56 at 7). Plaintiffs also assert that Woodruff devoted his full time to this action, and was unable to pursue other legal work. Id. Plaintiffs contend that the Tennessee ballot access statutes contain many provisions that are unique to Tennessee, thereby presenting multiple novel and difficult questions of law. Id.

In response, the State asserts any additional fees and costs granted to Plaintiffs should not exceed $19,137.50 in attorneys' fees and $424 in costs, as this action was not complex litigation requiring intensive fact gathering. (Docket Entry No. 101). The State contends that the additional attorneys' fee request contains hours that are inappropriate, excessive, redundant, or unnecessary, and that the amount should be reduced accordingly. The State further asserts if the Court finds that attorneys' fees on appeal should be allowed in this action, Plaintiffs' requested fees be reduced by 50% in regard to the motion for stay filed in the Sixth Circuit. Lastly, the State contends telephone conversations between Mr. Woodruff and the expert witness, Richard Winger, should not be approved because they are redundant expenses that do not reflect distinct contributions that were reasonable or necessary in this action on appeal or after remand.

After reviewing Woodruff's experience, expertise, and length of practice, the Court

concludes that the hourly rate of $250.00 sought by Woodruff reflects the prevailing market rate for similar actions in this venue.

After reviewing the itemized statements and the State's objections, the Court concludes that a portion of Woodruff's hours should be redacted. Here, Woodruff expended 66.3 hours on matters concerning the State's motion for stay pending appeal and the State's appeal. Yet, the Sixth Circuit granted the State's motion to stay this Court's Order pending appeal, Green Party of Tennessee v. Hargett, 493 Fed. Appx. 686, 690 (2012), and on appeal the Sixth Circuit reversed in part and remanded two of Plaintiffs' ballot-access claims for reconsideration. Green Party of Tennessee v. Hargett, 700 F.3d 816, 829 (6th Cir. 2012). In a § 1983 suit, the relevant attorneys' fee statute grants attorneys' fees to "the prevailing party." 42 U.S.C. § 1988(b). Given, on appeal, the Sixth Circuit granted the State's motion to stay, and reversed in part and remanded, Plaintiffs are not considered the prevailing party in the appellate proceedings. Thus, the Court excludes 66.3 appeal-related hours at Woodruff's hourly rate of $250 ($16,575.00).

The Court concludes that a portion of the litigation hours billed by Woodruff were clerical. Specifically, Woodruff billed 2.1 hours for "[c]ompil[ing] and fil[ing] copies of sample ballots from 2012 general election." (Docket Entry No. 100, at 6). The Court "declines to award fees to Plaintiff for hours billed by her attorneys that amount to clerical tasks and constitute the overhead cost normally expected in legal practice." Whirlpool Corp., 2011 WL 3321291 at *7. Thus, the Court excludes 2.1 hours at Woodruff's hourly rate of $250 ($525).

The State also contends that telephone conversations between Woodruff and Richard Winger should be excluded because Winger did not file any additional expert testimony following the original motion for summary judgment or during the remand period. In response, Plaintiffs assert

11

that Winger "monitors case progress and arguments being made and maintains an extensive file of unpublished options," saving Plaintiffs "multiple hours" or independent research. (Docket Entry No. 102, Plaintiffs' Reply, at 2). The Court concludes Woodruff's telephone conversations with Plaintiffs' expert witness, Richard Winger, are not redundant hours.

In addition, Plaintiffs seek 1.70 hours "for [Woodruff's] work performed on th[e] [attorney's fee] petition." Gunasekera v. Irwin, 774 F. Supp. 2d 882, 892 (S.D. Ohio 2011); (Docket Entry No. 56 at 17). "Fees incurred in 'preparation of an original fee petition' are supplemental 'fees for fees.'" Id. "Such supplemental hours should not exceed three percent of the award (the 'Three Percent Rule') in the main case when the fees issue is decided without a trial or five percent of the award in the main case when there is trial." Id. (citing Coulter v. Tennessee, 805 F.2d 146, 151 (6th Cir. 1986)). Here, the requested supplemental hours constitute 1.3% of the total award.

The Court itemizing Woodruff's hours as follows:

| Date | Description | Hours | Findings |
| --- | --- | --- | --- |
| 3/13/2012 | Receive and analyze motion for stay pending appeal; Shepardize cited authorities; telephone conference with Richard Winger re: Defendant's arguments and merits of contentions | 3.3 | Appellate Hours |
| 3/14/2012 | Research and draft response to motion for stay pending appeal; telephone conferences with Richard Winger and with Green Party Chair Martin Holsinger re: implications os Stay, if granted. | 4.9 | Appellate Hours |
| 3/16/2012 | Receive and review Order denying motion for stay; telephone conferences with Richard Winger and Martin Holsinger. | 0.6 | Appellate Hours |
| 4/3/2012 | Receive and analyze motion for stay [Sixth Cir.]; preliminary research | 1.9 | Appellate Hours |

| Date | Description | Hours | Category |
|---|---|---|---|
| 4/7/2012 | Telephone conference with Richard Winger; research and revise response to motion for stay | 2.7 | Appellate Hours |
| 4/25/2012 | Telephonic mediation conference | 1.4 | Appellate Hours |
| 4/26/2012 | Receive and review Tenn. Legislation amending minor party filing requirements; analyze application of Court's ruling to new legislation, telephone conference with Richard Winger re: implications for pending motions for stay and party strategies for 2012 elections. | 2.1 | Appellate Hours |
| 5/15/2012 | Telephonic mediation conference | 1 | Appellate Hours |
| 6/9/2012 | Receive, review and analyze Appellants' initial brief on appeal; telephoned conference with Richard Winger re: arguments made by Appellants and case authorities cited. | 4.1 | Appellate Hours |
| 6/10/2012 | Research and draft Response brief | 5.1 | Appellate Hours |
| 6/13/2012 | Research and revise Response brief and send draft to Richard Winger. | 6.8 | Appellate Hours |
| 6/21/2012 | Telephone conference with Richard Winger re: draft Response brief; final revision of response. Submit. | 5.2 | Appellate Hours |
| 7/23/2012 | Review all pleadings in Sixth Circuit; outline arguments for Sixth Circuit. | 6.2 | Appellate Hours |
| 7/24/2012 | Travel to Cincinnati for Oral Argument | 6 | Appellate Hours |
| 7/25/2012 | Return from Cincinnati | 6 | Appellate Hours |
| 7/25/2012 | Appearance at Oral Argument; meeting with clients. | 2.5 | Appellate Hours |
| 10/20/2012 | Research, draft and file motion to supplement pleadings and record | 2.2 | Appellate Hours |
| 10/24/2012 | Receive and review response to motion to supplement the record; research, draft and file reply. | 2.1 | Appellate Hours |

| 11/14/2012 | Receive, review and analyze Order granting fees; telephone conference with co-counsel and other parties affected. | 2.2 | Excessive time; 1.5 Hours Approved |
|---|---|---|---|
| 11/30/2012 | Receive, review and analyze Sixth Circuit Opinion; telephone conference with Richard Winger to discuss ruling and issues to be considered and argued on remand; research evidentiary requirements and case authorities to be considered on remand. | 6.8 | Approved |
| 12/4/2012 | Research and draft post-appeal motion for summary judgment. | 6 | Approved |
| 12/5/2012 | Research and revise post-appeal motion for summary judgment. | 7.6 | Approved |
| 12/13/2012 | Receive and review motion for relief from judgment (for attorney's fees); research and draft response in opposition. | 5.3 | Approved |
| 12/17/2012 | Draft and serve discovery re: issues on which Sixth Circuit required evidentiary analysis by District Court. | 2.3 | Approved |
| 1/31/2013 | Receive, review and evaluate copies of ballots for all Tennessee counties for 2012 general election; telephone conference with Richard Winger; telephone conferences with county elections administrators for Washing, Carter and Greene counties; research requirements for judicial notice; revise motion for summary judgment. | 3.8 | Approved |
| 2/2/2013 | Finalize and file renewed [post-appeal] motion for summary judgment on Counts I-A and IV | 3.9 | Approved |
| 3/21/2013 | Receive and review Order setting status conference; draft and file motion for clarification and to appeal telephonically. | 0.4 | Approved |
| 3/26/2013 | Receive and review response to amended motion for summary judgment; research arguments and authorities; draft reply. | 5.5 | Approved |

| Date | Description | Hours | Status |
|---|---|---|---|
| 3/27/2013 | Finalize and file reply in support of motion for summary judgment. | 3.1 | Approved |
| 3/28/2013 | Receive and analyze Defendants' motion for summary judgment; research and draft response. | 4.3 | Approved |
| 3/29/2013 | Research and revise reply in support of motion for summary judgment and respond to Defendants' motion for summary judgment. | 7.8 | Approved |
| 4/12/2013 | Appear (telephonically) at status conference | 0.2 | Approved |
| 4/15/2013 | Compile and file copies of sample ballots from 2012 general election. | 2.1 | Clerical |
| 6/18/2013 | Receive, review and analyze Memorandum and Order on motions for summary judgment; telephone conferences with Richard Winger and Darryl Castle (co-counsel) re: opinion and implications for Plaintiffs status as "qualified parties" pursuant to February, 2012 Order of the Court. | 2.15 | Approved |
| 6/24/2013 | Review time and expense records; draft and file supplemental motion for attorney's fees and costs. | 1.7 | Fee Motion Hours |
| | **Sub-Total:** Litigation Hours Requested | 117.25 | |
| | **Sub-Total:** Travel Hours Requested | 12 | |
| | **Sub-Total:** Litigation Hours Approved | 62.35 | |
| | **Sub-Total:** Travel Hours Approved | 0 | Appellate Hours |
| | **Total Hours Approved** | 62.35 | Approved at $250 hourly rate |

The Court concludes that Woodruff's expenses related to his travel to-and-from Cincinnati for oral argument are excluded, as they pertain to this action's appeal.

15

Thus, the Court concludes that the total award for Woodruff, including adjusted attorneys' fees and expenses incurred in litigating the issues remanded to this Court by the Sixth Circuit, is $15,587.50.

## B. Conclusion

For these reasons, the Court grants and award of reasonable attorneys' fees and costs to Plaintiffs, the Green Party of Tennessee and the Constitution Party of Tennessee, in the amount of $15,587.50 in addition to the $65,180.91 awarded to Plaintiffs' on November 14, 2012 (Docket Entry No. 66).

It is so **ORDERED**.

**ENTERED** this 23rd day of August, 2013.

WILLIAM J. HAYNES, JR.
Chief Judge
United States District Court