IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| GREEN PARTY OF TENNESSEE, CONSTITUTION PARTY OF TENNESSEE, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. 3:11-cv-00692 Judge Haynes |
| TRE HARGETT, in his official capacity as Tennessee Secretary of State, and MARK GOINS, in his official capacity as Coordinator of Elections for the State of Tennessee, | ) ) ) ) ) ) ) | |
| Defendants. | ) | |

**REPLY IN SUPPORT OF DEFENDANTS' MOTION TO EXCLUDE PLAINTIFFS' EXPERT'S REPORTS**

Come now Defendants and hereby submit this reply in support of their motion to exclude Plaintiffs' expert's reports and memorandum of law (D.E. 147 and 148) pursuant to Fed. R. Evid. 702.

**I. ARGUMENT**

In their memorandum of law in support of their motion to exclude Plaintiffs' expert's reports, Defendants detail the deficiencies in each of the 15 opinions offered by Plaintiffs' expert, Mr. Richard Winger, in his two reports, one dated February 9, 2015 ("Winger Report I") and the other dated May 22, 2015 ("Winger Report II"), which were submitted by Plaintiffs on remand of this case. (*See* D.E. 148). In their response, rather than attempt to address the specific deficiencies for each of Mr. Winger's opinions, Plaintiffs have made four general arguments in opposition to Defendants' motion: (1) Defendants' have waived their objections; (2) Statistical analysis is not

required for admission of Mr. Winger's opinions; (3) Mr. Winger is not required to reference specific data to support his opinions; and (4) Mr. Winger's "supplemental" opinions in his latter report are proper. As discussed below, Plaintiffs provide essentially no legal support for their arguments and a closer examination reveals that each of their arguments is fundamentally flawed.[1]

### A. There Is No Legal Basis For Finding Defendants Have Waived Their Objections To Winger Report I or Winger Report II.

In their response, Plaintiffs begin by claiming that Defendants should have raised their objections to Mr. Winger's reports at the time the reports were issued rather than through a *Daubert* motion after Plaintiffs' submitted the reports in support of their motions for summary judgment. Plaintiffs contend, without any legal authority, that Defendants' actions have resulted in Defendants' waiving their objections as to Winger Report I and Winger Report II.[2] This argument is nonsensical and contradicted by numerous cases. *See Sigler v. Am. Honda Motor Co.*, 532 F.3d 469, 480-481 (6th Cir. 2008)(objecting to admissibility of expert reports in summary judgment papers as opposed to motion in limine preserves objections for appeal)(citing *Fraser v. Goodale*, 342 F.3d 1032, 1036 (9th Cir. 2003) ("Fraser would have us conclude that the Bank waived its hearsay objection to the diary. However, the Bank's objection was clear, specific, and timely made to the district court in its reply motion for summary judgment. The Bank's evidentiary objection

---

[1] Plaintiffs' response is replete with flaws, including their contention that Defendants have erroneously cited to sections of the Federal Rules of Civil Procedure that have been renumbered. (D.E. 159, PageID#2825, fn. 1). In particular, Plaintiffs claim Defendants have inaccurately stated Mr. Winger's reports violated Fed. R. Civ. P. 26(a)(2)(B)(i)-(iii) which Plaintiffs believe is titled "Proceedings Exempt from Initial Disclosures." Plaintiffs' arguments on this issue are wrong. Under the current version of the Federal Rules of Civil Procedure, the "Proceedings Exempt from Initial Disclosures" is Fed. R. Civ. P. 26(a)(*1*)(B). Likewise, Plaintiffs' reference to Fed. R. Civ. P. 26(c)(2)(B) as the basis for Defendants' claims is wrong as Section (c)(2) of Rule 26 does not have any subparts and deals with the ordering of discovery. Consequently, Defendants citations to Fed. R. Civ. P. 26(a)(2)(B), which is titled "Witnesses Who Must Provide a Written Report," are correct.

[2] Plaintiffs also argue that Defendants' not filing a motion to exclude or strike Mr. Winger's initial report dated September 6, 2011 and relied upon by Plaintiffs' in their two prior motions for summary judgment somehow works to bar Defendants from objecting to any subsequent reports issued by Mr. Winger. Again, Plaintiffs provide no legal authority to support their argument that Defendants' lack of objection to Mr. Winger's first report serves as Defendants' forced acceptance of his future opinions.

was preserved."); *Taylor v. Principi*, 141 F. App'x 705, 708 (10th Cir. 2005) (unpublished) ("In his motion for summary judgment, defendant timely objected to Ms. Taylor's failure to properly authenticate the documents in her affidavit.")). Until such time as Plaintiffs' sought to admit Mr. Winger's reports into evidence, it is not even clear what procedure existed for Defendants to move for their exclusion under Fed. R. Evid. 702. This conclusion is further supported by the Case Management Order entered in this case on December 12, 2014, which sets the same deadlines for *Daubert* motions as motions for summary judgment. (D.E. 121, PageID#1686).

Likewise, Plaintiffs' reliance on *U.S. v. L.E. Cooke Co.* for the contention that "it is up to opposing counsel to inquire into the expert's factual basis" is misplaced. 991 F.2d 336, 342 (6th Cir. 1993). First, *L.E. Cooke* involved an expert witness's testimony at trial, not through an expert report. Second, in that case the expert's valuation of coal reserves was admissible because the expert *had* established a factual basis for his analysis through his observations of the property, his determination of the best use of the property, and his lengthy experience in mine engineering. *Id*. at 341-342. Nothing in *L.E. Cooke* alleviated the requirement that "the proponent of the [expert's] testimony…must establish its admissibility by a preponderance of proof." *Nelson v. Tennessee Gas Pipeline Co.*, 243 F.3d 244, 251 (6th Cir. 2001).

Lastly, Plaintiffs' contention that the Court can take judicial notice of some of Mr. Winger's opinions because they are similar to opinions he offered in his September 6, 2011 report, which the Court considered when ruling on Plaintiffs' prior motions for summary judgment, is erroneous as Fed. R. Evid. 201 allows a trial court to take judicial notice of *facts*. *See Toth v. Grand Trunk R.R.,* 306 F.3d 335, 350 (6th Cir.2002).

Consequently, there is no legitimate basis for finding that Defendants' have waived their objections to the admissibility of Winger Report I or Winger Report II.

3

## B. Established Case Law Shows That Reference To Statistics Without Any Further Analysis Does Not Satisfy The Requirements Of Fed. R. Civ. 702.[3]

As detailed in Defendants' memorandum of law in support of their motion to exclude Winger Report I and Winger Report II, Mr. Winger compares the percentages of voter returns for both the Green Party and Constitution Party over the course of several election cycles to offer several opinions including that "[t]he inclusion of a party affiliation designation of candidates on the ballot in an election contributes materially to the success of the party's candidates in future elections." (D.E. 147-1, PageID#2363). However, Mr. Winger does not provide any statistical analysis to establish "a statistically significant difference upon which to opine, [and, therefore, his] opinion must be excluded under *Daubert*." *Good v. Fluor Daniel Corp.*, 222 F. Supp. 2d 1236, 1243 (E.D. Wash. 2002)(citing *General Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997).

In their response, Plaintiffs do not dispute that Mr. Winger has not performed any statistical analysis, but instead argue that the election results cited by Mr. Winger "were based on data published by Tennessee and independently admissible." (D.E. 159, PageID#2828). Plaintiffs' argument misses the point. Defendants are not disputing the veracity of the actual election results to which Mr. Winger cites, they object to him opining that the observed percentage increases were *caused* by the inclusion of the party affiliation designation. Without performing an analysis to test the statistical significance of the increases, there is an impermissible analytical gap between the data and Mr. Winger's opinion. *Joiner*, 522 U.S. 136, 146 (1997). It is this analytical gap, which assumes causation based on limited correlation, that is improper and the reason Mr. Winger's opinions should be excluded under Fed. R. Evid. 702.

---

[3] In their response, Plaintiffs mistakenly claim that Defendants' motion to exclude should be denied because "Defendants have failed to assert, let alone demonstrate, that they have, or will be, prejudiced by asserted deficiencies in Winger's reports." (D.E. 159, PageID#2826). Contrary to Plaintiffs' argument, Defendants are not seeking to strike Mr. Winger's reports under Fed. R. Civ. P. 26, but are instead challenging their admissibility under Fed. R. Evid. 702, which does not require a showing of prejudice.

4

### C. As The Party Seeking To Rely On Mr. Winger's Opinions, It Is Incumbent Upon Plaintiffs' To Provide The Factual Basis For His Opinions.[4]

In their response, Plaintiffs argue that Mr. Winger's failure to provide an explanation for the factual basis of his opinions is excusable because "Winger's Expert Reports do not address 'ultimate facts' but only assert facts that must be _considered_ in reaching the ultimate fact." (D.E. 159, PageID#2831)(emphasis in original). While Plaintiffs' do not cite any case law allowing expert's opinions on non-ultimate facts to be admissible without a factual basis, a review of Winger Report I and Winger Report II directly contradicts Plaintiffs' claim. For instance, in Winger Report I, Mr. Winger opines on several ultimate issues, including:

- Requiring a minor party candidate (whose party has not qualified as a "recognized minor party") to be listed on the ball as an Independent imposes a severe burdens [sic] on the candidate, on the candidate's party and on voters (D.E. 147-1, PageID#260);

- There is no rational justification for Tennessee's ballot access schema when it is considered as a whole (*Id*. at Page ID#2362);

- The inclusion of a party affiliation designation of candidates on the ballot in an election contributes materially to the success of the party's candidates in future election (*Id*. at PageID#2363);

- Tennessee's statute denying minor parties the opportunity to have the first position on the ballot imposes significant burdens on their candidates and parties (*Id*.).

Clearly, these opinions purport to resolve the ultimate issue of the constitutionality of Tennessee's ballot access and ordering statutes. As more fully set forth in Defendants' memorandum of law,

---

[4] In their response, Plaintiffs only discuss the requirements of Fed. R. Civ. P. 26(a)(2)(B)(ii) which requires an expert report to disclose "the facts or data considered by the witness" and ignores Fed. R. Evid. 702(b) which requires an expert's testimony to be "based on sufficient facts or data." As discussed in Defendants' memorandum, because Mr. Winger has not provided the facts or data he relied upon for several of his opinions, it is not possible for the Court to perform its gate keeping function under Fed. R. Evid. 702(b) and these opinions, including, Mr. Winger's opinions 1-4 in Winger Report I and 4-6 in Winger Report II, must be excluded.

5

Winger Report I and Winger Report II are replete with Mr. Winger's unsupported opinions on ultimate issues and impermissible legal conclusions which should be excluded.

### D. The Content For Mr. Winger's "Supplemental Opinions" In Winger Report I, Was Known To Plaintiffs When Mr. Winger Issued Winger Report II.

In their response, Plaintiffs do not dispute that a supplemental report under Rule 26(e) is limited to correcting inaccuracies or adding information that was unavailable to expert at the time of the initial report. *Campos v. MTD Prods.*, 2009 U.S. Dist. LEXIS 63846, *24-25 (M.D. Tenn. July 24, 2009). Nor do Plaintiffs dispute that in Opinions Three, Four, Five, or Six of Winger Report II, Mr. Winger added new facts, arguments, and opinions that were not contained in Winger Report I. Instead, Plaintiffs argue these opinions were proper because "the significance of information added in Mr. Winger's Second Supplement Report did not become apparent until Defendants inquired into the success of the Green Party and Constitution Party in obtaining ballot inclusion in other states in Defendants' depositions of Joan Castle and Kate Culver." (D.E. 159, PageID#2832). This argument is misplaced for two reasons.

First, Plaintiffs have been aware of the issue of the Green Party and Constitution Party's success in obtaining ballot access in other states since the Sixth Circuit's instructions to Plaintiffs' in *Green Party of Tenn. v. Hargett*:

> Although the plaintiffs cannot, at this point, present evidence of their own difficulties complying with Tennessee's new scheme, given that it has only recently been enacted, they should nevertheless be able to develop evidence relevant to this scheme. *For example, they might survey states with ballot-access requirements similar to Tennessee's current ones to determine whether minor parties have had success in appearing on the ballot in those states. They might obtain affidavits from party organizers in other states describing the difficulties that they encounter complying with requirements similar to Tennessee's.* Their experts might be able identify meaningful distinctions between Tennessee and other states—based on such factors as geography, population demographics, the educational attainments of its residents, etc.—that could conceivably influence the petitioning process. Additionally, more detailed evidence of the plaintiffs' own past attempts to

> meet Tennessee's petition-signature requirements could also be helpful. These suggestions are not intended to limit the type of evidence that the parties might develop on remand, but only to illustrate where they might begin.

767 F.3d at 549, fn 4 (emphasis added). Accordingly, Plaintiffs' claim that Opinions Three, Four, Five, or Six of Winger Report II did not become significant until after Mr. Winger issued Winger Report I are baseless.

Second, the question of proper supplementation is whether the information was available to the expert at the time he issued his initial report, not when it became significant. Here, Plaintiffs do not claim that the information in Opinions Three, Four, Five, or Six of Winger Report II was unavailable to Mr. Winger when he issued Winger Report I. In fact, in their response, Plaintiffs acknowledge that Mr. Winger possessed the information beforehand. (D.E. 159, PageID#2833). Consequently, as none of Opinions Three, Four, Five, or Six of Winger Report II were correcting errors in his initial report or adding information that was unavailable to Mr. Winger at the time of the initial report, they are not proper supplementation under Rule 26(e) and should be excluded. *Campos*, 2009 U.S Dist. LEXIS 63846, *24.

## CONCLUSION

For the reasons set forth herein and in Defendants' motion to exclude Plaintiffs' expert's reports and memorandum in support (D.E. 147 and 148), Defendants respectfully request that this Court grant Defendants' motion to exclude Plaintiffs' expert's reports.

Respectfully submitted,

HERBERT H. SLATERY III
Attorney General and Reporter

/s/ Janet M. Kleinfelter
JANET M. KLEINFELTER (BPR 13889)
Deputy Attorney General
Public Interest Division

7

janet.kleinfelter@ag.tn.gov

/s/ Ryan A. Lee
RYAN A. LEE (BPR 31937)
Assistant Attorney General
Public Interest Division
P.O. Box 20207
Nashville, TN 37202-20207
(615) 741-3521
Ryan.lee@ag.tn.gov

## CERTIFICATE OF SERVICE

The undersigned hereby certifies on the 24th day of August 2015 that a copy of the above document has been served upon the following persons by:

  X  Electronic Case Filing (ECF) System to:

Alan P. Woodruff
9 Turkey Toe Lane
Arden, NC 28704
Alan.jd.llm@gmail.com

Darrell Castle
Darrell Castle & Associates
4515 Poplar Avenue, Suite 510
Memphis, TN 38117
Dlc25861@aol.com

/s/ Ryan A. Lee
RYAN A. LEE

8