IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| GREEN PARTY OF TENNESSEE, CONSTITUTION PARTY OF TENNESSEE, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. 3:11-cv-00692 |
| TRE HARGETT, in his official capacity as Tennessee Secretary of State, and MARK GOINS, in his official capacity as Coordinator of Elections for the State of Tennessee, | ) ) ) ) ) ) | Judge Waverly Crenshaw |
| Defendants. | ) ) | |

STIPULATIONS TO QUALIFICATIONS AND DIRECT TESTIMONY
OF EXPERT WITNESSES AT TRIAL

# EXHIBIT A - Affidavit and Expert Opinion of Richard Winger dated February 9, 2015

IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

GREEN PARTY OF TENNESSEE,
CONSTITUTION PARTY OF TENNESSEE
           Plaintiffs      Case No.: 3:11-692

Vs.

THE HARGETT in his official capacity
as Tennessee Secretary of State, and MARK
GOINS, in his official capacity as Coordinator
of Elections for the State of Tennessee

                                   **Defendants**

## AFFIDAVIT AND EXPERT OPINION OF RICHARD WINGER

City of San Francisco
State of California

COMES NOW, RICHARD WINGER who, being first duly sworn, says:

1) I am over the age of 18 and sui juris.

2) I hold a degree in political science from University of California at Berkeley.

3) For more than forty years I have:

   a   Followed efforts by state parties and candidates to obtain ballot access and am familiar with the burdens of satisfying those requirements.

   b   Studied statutes relating to ballot access and the procedures by which states provide for the nomination of candidates.

   c   Tracked state legislation relating to \ballot access, candidate nominating procedures and ballot organization and studied the "politics" of state legislative action.

   d   Studied the evolution and development of minor parties in the United States.

   e   Analyzed every identifiable judicial opinion, both published and unpublished, relating to ballot access and ballot structure,

4) Since 1985 I have published Ballot Access News, a monthly newsletter reporting on pending state legislation and court cases relating to ballot access by new parties and minor party candidates.

5) Since 1975, I have maintained a library of briefs and opinions concerning lawsuits on the constitutionality of ballot access laws. My library includes opinions on all such lawsuits that I have become aware back to the 1890's. My library also contains copies of each state's ballot access laws that relate to new and minor parties, and independent candidates, going back to the 1890's, when ballot access laws were first enacted in the various states. I have also collected election returns for all states, for all federal office, all gubernatorial elections, and all other statewide state office, back to the 1870's. I have also collected election returns for all states for legislative elections for the last 60 years, in instances at which minor parties had candidates in that state for legislature.

6) I have been recognized as an expert witness on minor parties and ballot access laws that affect them in ten states and testified in more than 300 cases.

7) The attached "Expert Report" represents by personal analysis and opinion relating to the topics addressed.

**FURTHER AFFIANT SAYETH NAUGHT.**

*Richard Winger*
RICHARD WINGER

**SWORN TO** and subscribed before me by Richard Winger, who is to me well known or who produced CALIFORNIA DRIVER LICENSE as identification, in the State and County aforesaid this 9TH day of FEBRUARY, 2015.

_____
NOTARY PUBLIC           My Commission Expires:

S. BANKS
Commission # 1937396
Notary Public - California
San Francisco County
My Comm. Expires May 20, 2015

# SUPPLEMENTAL EXPERT REPORT OF RICHARD WINGER

**OPINION ONE:** Requiring a minor party candidate (whose party has not qualified as a "recognized minor party") to be listed on the ballot as an Independent imposes severe burdens on the candidate, on the candidate's party and on voters.

A candidate's party affiliation is the single most important factors in determining how most voters vote. Voters rely on information about a candidate's party affiliation as indication of the candidate's political positions and philosophy. Voters who themselves are supporters of a particular party rely on a ballot designation of candidate party affiliation to select their candidate and are severely burdened that that information is not provided on the ballot. Analogously, for voters who prefer candidates who are truly Independent, the ballot identification as Independent for a candidate who actually has a bona fide party affiliation is misleading and deceptive and is the equivalent of a fraud on the voters.

For candidates with limited name recognition, having a party affiliation designated on the ballot is an extremely important "voter cue" to the positions and political philosophy of the candidate, and denial of that voter cue severely burdens the candidate's ability to secure the votes of voters sharing those positions and political philosophies.

Allowing candidates who have a bona fide party affiliation to have that affiliation identified on the ballot is critical to new parties because it enables them to establish identification with voters and promotes voter awareness of, and support of, the party. My research about recent Tennessee election shows that the identification of a candidate's party affiliation on the ballot consistently increasing support for the party and its candidates in subsequent elections. [See detained discussion in Appendix]

**OPINION TWO:** High petition signature requirement to qualify a new minor party impose severe burdens of new parties and make it virtually impossible for all but the most well-funded parties to achieve ballot recognition and qualification.

Petition signature requirements in excess of 5,000 signatures invariably mean that those minor parties must hire paid circulators.[1] Whenever petition signature requirements exceed 5,000, it is virtually impossible for a party to satisfy such requirements without engaging the services of paid petition signature collectors.

As a general rule candidates and parties must collect 1.5-1.75 times the number of signatures required by statute.

The cost of signature collection by paid signature collection ranges from $1.50 to $3.50 per signature, whether valid or not.

---

[1] See supplemental discussion in Appendix.

1

In states requiring more than 10,000 signatures, for a candidate or party, the cost of signature collection alone usually exceeds the revenue available to the party and effectively prevents that from obtaining ballot access. Moreover, even where the party or candidate has sufficient resources to collect the requisite number of signatures to obtain ballot access, the cost of signature collection represents such a burden that they often don't have sufficient funds to conduct an effective campaign.

In effect, when a state requires a party to submit 30,000 or 40,000 valid signatures, the petition signature requirement becomes, in effect, a very large filing fee. The ability of groups to get on the ballot when the petition requirements are high is restricted to groups that are well-funded. Severe ballot access requirements discriminate against parties that are composed of people who are not wealthy.

**OPINION THREE:** High party qualification petition signature requirements cannot be justified on the grounds that they reduce voter confusion.

My research has shown that if a state requires as many as 5,000 signatures to get on a ballot (whether for statewide office, or district office; whether a primary ballot, or a general election ballot) that ballot will never have more than eight candidates.[2] In *Williams v Rhodes*, 393 U.S. 23 (1968), Justice Harlan's concurrence said that eight candidates for a particular office is not so many as to cause voter confusion.

**OPINION FOUR:** High party qualification petition signature requirements cannot be justified on the grounds that they are necessary to show a "modicum of support" for the party.

Judicial opinions over the past 35 years have limited the content requirements of new party and candidate petitions. As a result of these opinions, petitions in most states do not require signers to say (a) are members of, or affiliated with, the party whose petition they are signing, (b) have affiliated with one another for the purpose of forming a new party or (c) are committed to supporting the party, or the candidates of the party, whose petition they are signing. Dicta in these decisions further suggests that any required language that requires petition signers to even assert their endorsement of the party would be unconstitutional. As a result of limitations on the language that may be required, signatures on party qualifying petitions represent little more than support for the general proposition that the party should be allowed to participate in elections, not that the signers have decided to vote for that party or candidate.

The fact that petition signatures do not measure actual support for a party or its candidates is vividly demonstrated by the experience of the Americans Elect Party. Americans Elect, founded in 2010 by a multi-millionaire, Peter Ackerman, and funded by

---

[2] There is only one exception: in 1976, Ohio, which requires 5,000 signatures for a statewide independent, had nine candidates on the ballot for President.

2

other very wealthy individuals as well, was able to petition onto the ballot in 28 states during 2011 and early 2012. Americans Elect held an on-line presidential "primary" during the last months of 2011 and the early months of 2012, but very few people chose to participate in that on-line primary. As of the end of the Americans Elect process, no presidential candidate seeking the Americans Elect nomination, other than Buddy Roemer, had received as many as 5,000 votes on the Americans Elect web page. Roemer received 6,293 votes in the entire nation. Among individuals who were not running in the Americans Elect process, but whom were "drafted", Ron Paul is the only individual who received as many as 5,000 votes in the entire nation. He received 9,498 votes. Thus, while in excess of 2,500,000 voters signed petitions to qualify the Americans Elect Party, less than 1% of those petition signers participated in the nomination of its candidate – even though participation in the nominating process of the Americans Elect candidate for President would not have prevented them from voting in a Presidential primary election in their own state.

**OPINION FIVE:** High party qualification petition signature requirements are not <u>necessary</u> to establish support for new parties.

The experience of other states shows that there are better methods to measure support for new parties than to require petitions. California permits groups to qualify as political parties if they are able to persuade .33% of the number of registered voters to fill out voter registration forms listing themselves as members of that group. Delaware has a similar procedure, but requires one-tenth of 1% of the number of registered voters to take that action. Louisiana also has a similar procedure, but requires 1,000 registrants. Those parties do not have an unreasonably large number of qualified parties. California has six; Delaware has five; Louisiana has five.

Also, many states permit an independent candidate to choose a partisan label that is printed on the November ballot, and if the independent candidate polls a certain share of the vote, then the group described in his or her label becomes ballot-qualified. In these states, *real* support for a party established by the way people actually vote. States that use this approach are Alaska, Colorado, Connecticut, Georgia, Indiana, Iowa, Kentucky, Massachusetts, Minnesota, Montana, New Hampshire, New Jersey, New York, Rhode Island, Vermont, Virginia, Washington, West Virginia, and Wisconsin.

In addition, three states require neither petitions nor registrations for a group to qualify as a party: Florida, Mississippi, and Vermont merely require the group to submit a list of party officers, to show that the groups really are organized. Vermont requires town committees in any ten towns, but the other two states do not even require any particular number of officers.

**OPINION SIX:** There is no rational justification for Tennessee's ballot access schema when it is considered as a whole.

The Tennessee ballot access schema does not reflect a consistent or cohesive policy. While Tennessee has one of the nation's highest party qualifying requirements, its

3

independent candidate qualifying requirement - 25 signatures for any candidate, except that 275 are needed for President - is the lowest in the country. Moreover, in requiring the same number of signatures for candidates for all offices (except President), Tennessee statutes completely ignore what every other state recognizes, which is that not all offices are of equal relevance or importance and candidates for statewide offices *should* be required to satisfy more stringent requirements to qualify for ballot inclusion.

**OPINION SEVEN:** The Green Party and the Constitution Party have demonstrated sufficient voter support to be recognized in Tennessee.

The Green Party and the Constitution Party are bona fide parties with substantial support around the nation. In 2012, one or the other, or both of Parties had presidential candidates on the ballot in more than three quarters of the states The Green Party has won state legislative elections in California, Arkansas, and Maine, and the Constitution Party has won a state legislative race in Montana and in 2014 won two partisan elections in Louisiana for local office last year.

**OPINION EIGHT:** The inclusion of a party affiliation designation of candidates on the ballot in an election contributes materially to the success of that party's candidates in future elections. For example, Green Party had a candidate for Governor in 2010, but that candidate was listed *without* a party label and polled only 0.12%. However, the Tennessee candidates of Green Party and the Constitution Party for statewide office (U.S. Senate) in the 2012 general election – where they were identified by their party affiliation for the first time -- polled 0.90% and 1.66% respectively. The candidates of the Green Party and the Constitution Party for statewide office (Governor) in the 2014 general election – where they were identified by their party affiliation -- polled 1.4% and 2% respectively. These data show both that (a) a party label has a significant impact of the number of votes received and (b) support for party candidates increases as voters become familiar with seeing candidates listed with a party label. My research shows similar improvements of the performance of minor party candidates in the election following their initial inclusion on the ballot with a party designation throughout the country.[3]

**OPINION NINE:** Tennessee's statute denying minor parties the opportunity to have the first position on the ballot imposes significant burdens on their candidates and the parties.

"Positional bias" – the benefit that accrues to candidates listed first on the ballot – is legislatively acknowledged to be real[4], and twenty nine states (including twenty two states that use the "office block" [a/k/a "office group"] form of ballot used in Tennessee) have enacted legislation specifically intended to minimize it. Twenty two States also have statutes that mandate that ballot order be determined alphabetically or by lottery, and

---

[3] See supplemental discussion in Appendix.

[4] See supplemental discussion in Appendix.

4

fourteen of those states further require that ballot order be rotated or randomized from electoral district to electoral district and even from precinct to precinct.

The legislative recognition of positional bias has been expressly acknowledged in the statutory language of some states. For example, the Kansas statute, which requires that ballot order be rotated from precinct to precinct, says:

> "Such rotation shall be developed and arranged so that each candidate shall have an equal opportunity as near as practicable for the respective offices to which they are nominated." K.S.A. § 25-610

Similar expressions of purpose are found in the statutes in Ohio, ORC §3505.03, Montana, 3-12-205 MCA, Arizona, AZ Rev Stat §16-464, and in the legislative record of many other states where positional rotation is mandated by statute.

# APPENDIX:
## Supplement to Opinions:

### Supplement to Opinion Two:

Volunteers may be eager to help get their own party on the ballot, but most volunteers are not very good at getting many signatures. It is psychologically difficult for most people to ask strangers to sign a petition to put a new party on the ballot. Volunteers are good at asking friends, co-workers, neighbors, and relatives to sign a petition, but when there is no social link between the petitioner and the potential signer, petitioning is arduous. Professional petitioners have learned skills that enable them to overcome these problems, but of course they cost money. In effect, when a state requires a party to submit 30,000 or 40,000 valid signatures, the requirement becomes, in effect, a very large filing fee.

### Supplement to Opinion Eight:

Tennessee has now held two general elections, 2012 and 2014, in which the Green Party and the Constitution Party nominees were labeled on the November ballot with their party names, instead of "independent." The results show that when these parties have their labels on the ballot next to the names of their nominees, their nominees receive considerably more votes.

### Green Party Experience, 2010 Compared to 2014

The Tennessee Green Party ran Howard Switzer for Governor in 2010. His ballot label was "independent", and he only got .12% of the vote. In 2010, the Green Party had gubernatorial candidates on the ballot in fourteen states, and in the other thirteen states, they all did better than Switzer. The other thirteen gubernatorial candidates had the label "Green Party" on the ballot. The showings, in percentage order, were: Illinois 2.70%; Arkansas 1.86%; Ohio 1.52%; Massachusetts 1.43%; New York 1.29%; California 1.28%; Arizona .93%; South Carolina .93%; Maryland .64%; Michigan .64%; Nevada .63%; Texas .39%; Minnesota .29%.

But in 2014, the Tennessee Green Party nominee for Governor, Isa Infante, did far better. Around the nation in 2014, the Green Party had eight gubernatorial nominees on ballots. The showings were: New York 4.84%; Ohio 3.33%; Oregon 2.02%; Tennessee 1.37%; Colorado 1.34%; Arkansas 1.15%; Michigan .47%; Texas .39%. Whereas in 2010 the Tennessee Green Party had the nation's worst showing for Governor, in 2014 its showing was slightly better than the median Green Party gubernatorial showing of 1.36%.

In 2010, the Green Party only had one other candidate, John P. Miglietta, for any public office in Tennessee. He ran for U.S. House, 5th district. He had the label "independent", and he polled .22%. In the entire nation in 2010, the Green Party had 56 nominees on the ballot for U.S. House. Except for Miglietta, they all had the party label.

6

Miglietta got the lowest share of the vote of any of the 56 candidates. The candidates outside Tennessee ranged from 8.32% in the Illinois 4th district, to .70% in the Michigan 3rd district. The median percentage of the vote for the Green U.S. House candidates in 2010 was 1.45%. All 56 of the candidates ran in districts that had both a Democrat and a Republican in the race.

By contrast, in 2014, the Tennessee Green Party did much better for U.S. House. It ran Robert N. Smith in the First District, and he polled 7.08%; and it ran Norris Dryer in the Second District, and he polled 2.42%. Smith ran in a race with no Democrat on the ballot, and races with only one major party nominee always give heightened percentages of the vote to minor party candidates, so I will set the First District race aside. The Green Party showing in the Second District, in which both major parties had nominees, is noteworthy. Dryer's 2.42% of the vote was better than the median showing of Green Party U.S. House candidates around the nation in 2014. In 2014, the Green Party had U.S. House nominees on the ballot in 36 districts, excluding districts with only one major party running. The median for those 36 races was 1.80%. This shows that when Tennessee Greens had a party label on the ballot, their showings exceeded Green Party showings from other states. But when they lacked a party label, as in 2010, their showings were at the bottom of Green nominees nationally.

The Green Party had two candidates for the legislature in 2014. They both ran in races with only a single major party opponent. Amy Balderrama polled 17.00% for State Senate, 23rd district; Martin Holsinger polled 9.30% for State House, 54th district. The Green Party did not run any candidates for the legislature in 2010 or earlier years. The party did have three candidates for the State House in 2012, and they enjoyed having the party label on the ballot just as the 2014 candidates did. Suzanne Parker polled 3.93% in the Third District; Calvin Cassady polled 17.78% in the Fifteenth District; Bryan Moneyhun polled 15.24% in the Sixteenth District, and Susan Shann polled 22.69% in the 55th district. The latter three candidates ran in races with only one major party opponent.

### Constitution Party Experience:

The Constitution Party ran very few nominees in Tennessee before 2012, except for Presidential Elector. Before 2012, it had never run any candidates for Governor, U.S. Senate, or legislature. In 2014, it ran its first gubernatorial nominee, Shaun Crowell, who polled 1.96%. The Constitution Party had six gubernatorial nominees in 2014, and its Tennessee nominee was its third best showing for Governor. The other Constitution Party nominees polled 2.73% in Nevada, 2.50% in Alaska, 1.19% in Idaho, 1.09% in Oregon, and .61% in Michigan. All of them had a party label.

The U.S. Senate nominee in Tennessee in 2014 was Joe Wilmuth, who polled 2.63%. That was the Constitution Party's best showing for U.S. Senate in 2014.

Also in 2014, the Constitution Party ran its first nominees for Tennessee legislature. Tim York polled 2.94% for State Senate, 27th district; Mike Warner polled

7

30.00% for State House, 67th district, in a race against only a single major party opponent.

## Libertarian Party Experience

Unlike the Green and Constitution Parties, the Libertarian Party did not enjoy having the party label on the ballot in Tennessee in 2014. It ran Daniel Lewis for Governor, and he polled .61%. The Libertarians had 24 gubernatorial nominees in 2014, and Lewis polled the second-worst percentage. The percentages in the other states were: Vermont 4.38%; Idaho 4.07%; Kansas 4.05%; Arizona 3.81%; Florida 3.75%; Nebraska 3.52%; Illinois 3.35%; Alaska 3.22%; Wyoming 2.41%; Georgia 2.36%; Colorado 1.94%; Arkansas 1.92%; Iowa 1.80%; Hawaii 1.75%; Texas 1.60%; Oregon 1.50%; Maryland 1.47%; South Carolina 1.24%; Michigan 1.13%; Oklahoma 1.11%; Minnesota .92%; Wisconsin .78%; and New York .45%. Probably the only reason New York's percentage was lower than the Tennessee percentage is that New York uses a party column ballot, and in the counties outside New York city, squeezed the Libertarian Party nominees into the same column that was assigned to the Stop Common Core Party, so that the title over that party column was the confusing label "Stop Common Core/Libertarian."

The Libertarian Party 2014 nominee for U.S. Senate in Tennessee was Joshua James. He polled .41%, easily the lowest showing of the Libertarian Party's 22 U.S. Senate nominees. The second-worst showing for Libertarians running for U.S. Senate in 2014 was in Iowa, where the party's nominee, physician Doug Butzier, was killed in an airplane crash a few weeks before the election, but even he polled .73%. All of the Libertarian Senate nominees outside Tennessee had the party label on the ballot.

Depriving voters of a ballot with party labels for some candidates is a severe burden on the voters who wish to vote for particular minor parties. From the election returns presented above, it should be easily apparent that a significant share of the electorate in recent elections wants to vote for nominees of the Green, Constitution, or Libertarian Parties, and the normal vote those parties would receive is suppressed when the party labels are missing.

## Supplement to Opinion Nine:

In studies of general elections in Ohio, North Dakota and California, Stanford Professor Jon Krosnick, who is generally acknowledged to be the nation's foremost authority of positional effects, found definitive "primacy effects" in general elections. These findings are especially significant because they studied elections where the positions of candidates were *rotated* and therefore the significance of the candidate's party affiliation was minimized.

It is also significant that positional bias was established in a study of the ballot-order effects conducted for the Vermont legislature. In that study, a statistically

8

significant first-position bias was found in an empirical study of partisan elections to the Vermont House of Representatives in three separate election studies

        Also relevant is the fact that, as Professor Krosnick's research has shown, positional bias significantly increases in voting for "down ballot" offices and in "low information" voting. This phenomenon is easily understood. Voters go to the polls with definite ideas about how they are going to vote for top-of-the ticket" offices – President and Governor. But they are less likely to have strong feelings (or be well informed) about the candidates for state senator and state representative. Moreover, because these offices are listed at the end of the ballot, by the time they get to these offices voters are suffering from what Professor Krosnik refers to as "voter fatigue."

Joanne M. Miller & Jon A. Krosnick, "The Impact of Candidate Name Order on Election Outcomes", 62 Pub. Opinion Q., Vol. 62 No.3, 291 (1998).

H. Bain & D. Hecock, *Ballot Position and Voter's Choice: The Arrangement of Names on the Ballot and its Effect on the Voter* (1957)

Note, *California Ballot Position Statutes: An Unconstitutional Advantage to Incumbents*, 45 S. Cal. L.Rev. 365 (1972)

Note, *Constitutional Problems with Statutes Regulating Ballot Position*, 23 Tulsa L.J. 123 (1987).

9

Case 3:11-cv-00692   Document 249-1   Filed 07/06/16   Page 12 of 12 PageID #: 3902